Good morning, ladies and gentlemen. Our first case for this morning will be United States v. Christopher Seifer, or Seifer, whichever. So we're ready for you, Mr. Mohabit. Thank you and good morning. May it please the court, my name is Amir Mohabit. I'm the attorney for the appellant, Christopher Seifer, in this matter. This appeal raises one issue, and that is whether the district court's selection of an alternate juror, done erroneously and in violation of Federal Rule of Criminal Procedure 24, warrants that this honorable court vacate the judgments imposed upon Mr. Seifer, vacate the sentence, and remand this case to the district court in Wisconsin for a new trial. We argue that it does. Now, is it your position that this is beyond the argument of prejudice or no prejudice? Because Mr. Seifer knew from the very beginning that this was the procedure the district court was going to use, and he never made any objection to it. That is correct, Your Honor. There was no objection, and Mr. Seifer was represented by competent counsel throughout the trial. Counsel did not voice an objection. My sense of it is perhaps the district court defense attorney and the government may not have known that the way district court... They were all ignorant of the law involved. Pardon me, Your Honor? They were all ignorant of the law involved. I'm afraid that's very possible. Well, improbable, but possible. Perhaps, Your Honor. The section is obscure, you'll have to admit. Well, in retrospect, it's clear. I suppose at the time it could have been obscure. Hindsight is the greatest thing in the world. It is, Your Honor. You were aware of this altering the proceedings five years before this event. No, I was appointed only on this appeal. I know. Were you aware of the rules? Honestly, Your Honor, I was not until I started reading the transcripts. I joined a majority of people, actually. Yeah, so pouring through the transcripts, this is the issue that I came up with that I thought was the best issue to raise on this appeal. But that takes me back to the question of prejudice, because if no objection was made at the trial, then at best we're on plain error review. And I think the only way you could... I don't see how this hurt him. Maybe you can talk about that for a minute, because it appears that the jurors had no idea who was going to be on the final jury until the actual moment. So they were all paying attention, they were all doing what they should be doing. Well, I think there was prejudice, Your Honor. And I'm actually going to quote from the government's brief to support my position, if I may. There were actually two government briefs. I'm referring to the amended one that was filed May 28, page 7. That's the first full paragraph. I'm just going to read part of that first line. Well, and I think that's accurate as to what really happened there. Well, with this being said, this implicitly invited the person sitting in juror seat number 13 to conclude that he or she was the alternate. But do we know that there was, say, a seat 13? I thought the judge just assigned seats. I'm not sure that we are aware that the jurors could draw that inference from the seating arrangements. I don't know if the seats were actually labeled 1 through 13, but just the person sitting on the end would look down the line and see 12 other people. Well, front row, back row, I mean, that seems very speculative to me. You know, Your Honor, there is speculation involved, absolutely. But when the district court violates the black letter rule of law, the district court now invites this kind of speculation. Well, it does, but then that's why we have the harmless error, why we need to show prejudice. It's not really harmless error. And my point is that there is prejudice. We're arguing that Mr. Seifer was deprived of a attentive jury because of the person seat number 13, very possibly assuming he or she was the alternate and not paying as much attention as the other 12. And then when the alternate was selected... If I read the record, that would be to your client's benefit, not paying any attention. I don't think so, Your Honor. You know, it's kind of like, to use a sports analogy, the backup goalie... I admire your position for taking it, only because there was so little for you to grasp. Well, Your Honor, I think we've grasped something here, though. I think we've got something. You know, the backup goalie, the backup quarterback, they're not going to pay as much attention as the starter. And the person sitting in seat number 13 could very well have assumed they were going to be the backup, not paid much attention for the trial that lasted several days, got thrown into the mix when they realized they were not the alternate, and they just went along with what the majority was leaning towards. That's what I think. But that's not what the district judge told them at the beginning of the fourth year, is it? I thought he explained, you know, we're going to pick a jury of 15. If at the end... Or, sorry, 13. At the end, everybody's still here. I mean, he was sort of accounting for the fact that maybe somebody might get sick or somebody might have a personal emergency. So your theory also requires us to think that none of these 13 people was paying any attention to what he said. No, Your Honor. I think as a practical matter, a layperson, not even an attorney, is going to stand up and start saying, Judge, you're wrong. I just don't think it works like that. But I'm saying from a common sense point of view, the transcript shows that he says, we will pick a jury of 13 if at the end of the trial all 13 jurors are with us. Mr. Seifer will randomly draw one of the jurors' names who will be designated the alternate and excused. I mean, that's kind of plain English, and I don't know why I should think that the jurors didn't understand that. Even if they did understand it, Your Honor, it violates Rule 24. I know it gets circular. That much is correct. I mean, you're right that our court has read Rule 24 to make this an inappropriate procedure. But that's not enough. You have to show prejudice. And going a little bit further, there's also the issue as to the lottery system itself, I think, being a failure. Even assuming the best faith on the part of whoever put the names in the box, somebody anonymous, who we don't even know who it was, we don't know with clarity that all 13 names made it into the box. A piece of paper could have fallen off onto the floor somewhere. Why does that mean it's an unfair procedure, though? I mean, it's still pretty random whose name gets picked. We don't have any reason to think that the name that got picked was somebody who was particularly inclined to rule for Mr. Seifer or anything. It's random. Random, but perhaps, we argue, skewed. You see, I cite the Wisconsin gambling statute for the proposition, although not directly on point, just for the analogy, that there are these checks and balances in place to make sure each lottery ball is the same size and everything is accounted for. We don't have that here. So there's a homemade lottery that's supposed to take the place of Federal Rule of Criminal Procedure 24. That's just not good enough. I have one question. Yes, Your Honor. Did Mr. Seifer use all of his preemptory challenges? Offhand, I cannot recall, Your Honor. You're in your rebuttal time. I am. May I reserve time? I only ask that because if he didn't, then that would imply that they approved all the jurors. And I don't recall at this moment, Your Honor. Okay. But I'm certain the transcripts are all in the record. It would be in there. Thank you. Okay. Thank you very much. Mr. Proctor. Thank you, Your Honors, and may it please the Court. Were you the trial attorney? I was, Your Honor. Have you tried a lot of cases before Judge Stadtmiller? I've tried two, Your Honor. Oh. Are you aware of whether he uses this system in other cases or whether this is unique to this case? I believe it is his preferred practice, Your Honor. Pardon? That is his practice? I believe it's his preferred practice, Your Honor. If objections were raised, I presume that— Well, no objections were raised. Not here, Your Honor. I was just curious as to whether this is a one-shot in the dark or he uses this regularly. I believe it is his preferred practice. Well, he's now been made aware of the fact that it's iffy. Understood, Your Honor. Absolutely. Maybe he will be made aware of that after this case. One way or the other. Do you happen to know the answer to Judge Mannion's question whether the defendant used all of his peremptories? I believe he did use all his peremptories, Your Honor, and so did the government. We targeted the first 29 jurors in the pool, and as certain jurors were excused for cause, additional jurors after the random selection of jurors 1 through 29 were added, so that we had a pool of 29 from which to exercise our strikes. All 16 strikes were exercised by the parties, so we had a pool of 13, as the district judge indicated would be the case in the final pretrial conference. It seems to me it's risky for the government to let this go by, even if it is Judge Stattmuller's preferred practice, because our court has quite a number of decisions that do not read Rule 24 to permit this procedure. I understand, Your Honor, and, yes, it is error. It seems like the government could speak up, too, because you don't want to lose a conviction just because you're the wrong kind of jury. Certainly, Your Honor. I take it the government was unaware of the rule, too? The way that the final pretrial conference... No, no, no, no. Was the government aware of the rule when the case was tried? Were you aware of the rule? I was not aware of the rule. Okay. I believe my co-counsel may have been, but if I could ask... You weren't speaking for the entire office, but at least you didn't know about the rule. I concede that I did not. In the context of the final pretrial conference, the judge laid out this procedure. He also addressed how he wants to address jury instructions, how he wants to address the numbering of exhibits. This is one of those things that the judge addresses, and the parties addressed other matters at the final pretrial conference. The judge invited any comments from any of the parties in retrospect. Which is when this should have happened, because here's the problem, of course. Yes, we can say it's the defendant's burden to show prejudice, but there are tremendous restrictions on the way that can be met. The defendant can't just go out and invade the province of the jury that deliberated and ask the jurors, you know, what did they think. That's off bounds. And so it's not clear. Maybe prejudice exists when people exhaust their peremptories, for all I know. Your Honor, on that point, I believe that the... defendant must show real prejudice. He must show under these circumstances... But how can he do that? I mean, if you were the defendant, how would you go about that task? Under these circumstances, it is very difficult, but because it's very difficult doesn't mean that it is some type of reversible error. But it's not good to have rules that can absolutely never be complied with. That's not really an honest way of describing the situation. It's a way of saying that this is just an unregressible error. With what was presented in this case, Your Honor, we have a random selection drug. The rule was violated. But does it impact the partiality or impartiality of the jury that actually returned a verdict against Mr. Seifer? In this case, there is no real prejudice against Mr. Seifer. Do you think it would ever be a violation of Rule 24 on these lines where prejudice could be shown? Under the circumstances of this case? No, I'm not asking you ever. We don't decide only one case. When we write an opinion, it's going to apply to other cases too. So should we... Is the net result Judge Stadmuller should continue just doing this because it will never be reversible error even though it violates Rule 24? Your Honor, I can't think of a way off the top of my head. I know other cases have addressed where the randomly selected juror happened to be of the same race of the defendant where that type of argument comes in. That's a different problem. It is, Your Honor. I'm trying to think of possible violations of Rule 24 that could raise to that, but I haven't... What about what Mr. Mohabit says if it's very clear that there are seats 1 through 6, 7 through 12, and 13, and somebody's sitting there under the impression, not having paid attention to what the judge said, that they're the alternate? Sure, Your Honor. All the jurors would have had to be ignoring the judge's instructions. The judge instructed all of the jurors to pay attention to all of the evidence. He instructed all 13 of the impaneled jurors exactly the same. There was no specifically labeled juror seat number 13. I understand the defendant, the appellant, has conceded that he is speculating that maybe a juror recognized that he or she was the last person in the seat. But the jurors would have had to ignore the judge's instructions. Moreover, I think to assume that one of the jurors would have presumed that they were the alternate and therefore not paid attention, it kind of undermines the whole argument on appeal where the remedy would be Rule 24, following it to the letter, where the alternate juror is designated in advance. Are we to presume that that juror just doesn't pay attention when that juror is specifically there to replace a juror who could be called away? Does the whole jury then become non-partial? I think that the argument fails along those lines. I think it may work the other way around. The people who know that they are the jury are perhaps going to give it an extra measure of attention. It's not that we assume the alternate couldn't serve, but the rule doesn't say, use the system Judge Stadmuller uses. Maybe it's a better system for all I know, but that's not what the rule requires. I understand your argument. You're essentially arguing for an unredressable error, I think. And under these circumstances, the error, if we look to plain error review, there is no prejudice. So I understand that there's error. I can see that the government, the district court, and defense counsel should have made it clear. With a timely objection, though, that would be completely different, right? Because the judge could have fixed it. I believe so, Your Honor. It could have been addressed. I doubt that the judge would have said, I'm just not going to pay attention to these cases in which this court has specifically said that practice should not be continued anymore. And if it is going to be continued, then a clear waiver on the part of the defendant needs to be from the record. That isn't in this case. I understand that, Your Honor. To equate Rule 24 with the Sixth Amendment jury right to a fair trial without showing prejudice is not sufficient. With that, Your Honors, I'm open to any other questions. Otherwise, I ask that you affirm the judgment of the district court. Okay. Apparently no more questions. Thank you. Thank you. Anything further, Mr. Mohabbat? Okay. To pick up a point that your opponent made, in all juror trials under the rule, even selected under the rule, the alternate jurors know that they are alternate jurors, don't they? At that moment, yes, Your Honor. No, when they're sworn in, they know they're alternate jurors. At the moment, they're sworn in. That's how the rule is supposed to work. Right. The rule is supposed to work. So they know they're alternate jurors. Do you think they all pay less attention to the facts than the 12 jurors who know they are not alternates? Not necessarily, Your Honor, but Justice Wood made a good point. Well, not necessarily. Do you think that would preclude the use of alternate jurors in any case because the possibility is they might not be giving the same strict attention to it to the ones who know they are not alternate jurors? Isn't that correct? I don't think so, Your Honor. Why not? It's the same thing. Well, as Justice Wood indicated a few minutes ago, all 13 might be paying attention, but somebody within the first 12 might just give it a heightened level of attention. That's what I want to talk about. Are you entitled to a heightened attention, jury, when you listen to people that are paying close, renewed attention to everything that's said? No, just an attentive one. I didn't think so. Okay. By the way, my questions do not deprive me of the fact that I admire you for having selected this. Thank you, Your Honor. The last point I wanted to make is that the practice in the district court, which seems to be the common one, is one that hurts the court's integrity and its reputation in the public's eyes. And for these reasons, we ask that the relief requested please be granted. All right. Well, thank you very much. You were appointed, and we appreciate very much your taking on the case. It helps the court, and I'm sure it helps your client. Thank you. Thanks as well to the government. We'll take the case under advisement.